1

2

3

4

5                    UNITED STATES DISTRICT COURT

6                    EASTERN DISTRICT OF WASHINGTON

7   HOLLY KIRWIN, a married woman;
    GAIL ANDERSON, a single person; and        NO:  CV-10-365-RMP
8   DAN O'ROURKE, in his capacity as
    Chapter 7 Bankruptcy Trustee,              ORDER GRANTING
9                                              DEFENDANTS' MOTION FOR
                            Plaintiffs,        PARTIAL SUMMARY JUDGMENT
10          v.

11  TEAMSTERS LOCAL UNION NO.
    609; JUSTIC "BUCK" HOLLIDAY; and
12  VAL HOLSTROM,

13                          Defendant.

14
           Before the Court is the Defendants' Motion for Partial Summary Judgment,
15
    ECF No. 26.  Oral argument was had in this matter on October 14, 2011.  The
16
    Court has reviewed the pleadings and the file in this case and is fully informed.
17
                                  BACKGROUND
18
           Defendant Teamsters Local Union No. 690 ("Local 690") is a local union
19
    affiliated with the International Brotherhood of Teamsters ("IBT").  ECF No. 59 at
20

    ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
    JUDGMENT ~ 1

1   2.  Local 690 is governed by an executive board consisting of a president, vice

2   president, secretary-treasurer, recording secretary, and three trustees.  ECF No. 65

3   at 2.[1]  Executive board elections are held every three years.  ECF No. 65 at 2.

4   Defendant Justin "Buck" Holliday served as secretary-treasurer of Local 690 from

5   1995 until January 1, 2010.  ECF Nos. 59 at 3, 65 at 3.  Defendant Val Holstrom

6   served as executive board president from 1998 until 2009.  ECF No. 65 at 3.

7       At the time relevant to the events of this case, Local 690 employed six

8   business agents and three administrative staff.  ECF No. 65 at 3.  The

9   administrative staff consists of an office manager, bookkeeper, and dispatcher /

10  "TITAN" operator.  ECF No. 65 at 4.  The administrative staff positions are

11  appointed by the Secretary-Treasurer.  ECF No. 65 at 3.

12      Plaintiff Gail Anderson was hired by Local 690 in 1998.  ECF No. 65 at 4.

13  Originally, Ms. Anderson was hired as a TITAN operator and receptionist.  ECF

14  No. 46 at 8.  TITAN is the IBT's national information data base.  ECF No. 46 at 9.

15  During her tenure at Local 690, Ms. Anderson also worked as a bookkeeper and

16  office manager.  ECF No. 65 at 4.  At the time of Ms. Anderson's termination from

---

17      [1]Plaintiffs objected to the Court's consideration of evidentiary materials filed

18  with the Defendants' reply.  ECF No. 68.  At the October 14, 2011, hearing, the

19  Court overruled the objection and allowed Plaintiffs an opportunity to submit

20  additional documents opposing the summary judgment.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 2

Local 690, Ms. Anderson was working as a TITAN operator and bookkeeper.  ECF No. 46 at 26.  Plaintiff Holly Kirwin was hired by Local 690 in 2006 as a Dispatcher / Secretary.  ECF No. 46 at 34.  Ms. Kirwin also had access to the TITAN system.  ECF No. 32 at 29.

The primary duties of the office staff were posting dues, communicating on TITAN, answering phones, taking dues from members over the counter, serving as support staff, filing, and dispatching.  ECF No. 32 at 13, 59 at 4.  When logged into TITAN, Ms. Kirwin and Ms. Anderson had access to members' names, addresses, phone numbers, social security numbers for those members who had supplied them, and the names of the members' employers.  ECF No. 32 at 9-10, 30.  Ms. Anderson and Ms. Kirwin had access to the office safe that housed the day's cash and checks received, blank checks, deposit certificates, a petty cash drawer, and the union seal.  ECF No. 32 at 15, 46 at 42.

As bookkeeper, Ms. Anderson had access to receipts, credit card receipts, and the union's bills.  ECF No. 32 at 17.  Ms. Anderson would open the mail received by the union, including the secretary-treasurer's mail.  ECF No. 46 at 14.  She would take the mail, open it, date stamp it, copy it, and put it in the appropriate officer's box.  ECF No. 46 at 14.  Ms. Anderson also answered phones, did some dispatching, worked on TITAN, took messages for business agents, and occasionally prepared correspondence for the business agents.  ECF No. 46 at 26-

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 3

27.  Ms. Anderson considered the information on TITAN to be confidential.  ECF No. 32 at 22.

Ms. Kirwin's duties revolved primarily around answering phones, operating the front desk, taking and inputting cash dues, mailing receipts, preparing bank deposits, preparing materials for new hires, and preparing contract booklets for members.  ECF No. 46 at 34.  Ms. Kirwin would take phone messages primarily for Mr. Holstrom and Mr. Holliday.  ECF No. 46 at 35.  In taking dues, Ms. Kirwin would handle cash and checks from members and provide a receipt.  ECF No. 46 at 35-36.  She was also type documents for business agents, including letters.  ECF No. 46 at 49.

In December 2009, Local 690 held an election for officers.  ECF No. 65 at 6.  Mr. Holstrom ran to replace Mr. Holliday as Secretary-Treasurer.  ECF Nos. 59 at 11, 65 at 6.  Mr. Holliday declined to seek re-election and supported the "Tried and True Performance Team," the slate on which Mr. Holstrom ran.  ECF Nos. 59 at 11, 65 at 6.

Ms. Anderson ran for the position of Vice President on the "Members for Members" slate.  ECF Nos. 59 at 9, 65 at 6.  That slate included Ms. Kirwin's husband, who ran for a Trustee position, and Bob Holman, who ran for president.  ECF No. 59 at 9.  Ms. Kirwin and Ms. Anderson supported the "Members for Members" slate in opposition to Mr. Holstrom and the Tried and True slate.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

When Mr. Holman announced that he would seek election on the Members for Members slate, a meeting of the board was held without Mr. Holman.  ECF No. 40 at 4-5.  During that meeting, Mr. Holman's authorization to sign checks was revoked.  ECF No. 40 at 5.  Mr. Holman complained of this conduct to the IBT and the Joint Council of Teamsters No. 28.  ECF No. 40 at 5.  Mr. Holman's authority was later reinstated.  During the campaign for the 2009 board elections, Mr. Holliday and Mr. Holstrom stated that employees opposing the Tried and True slate would be terminated if the slate was elected.  ECF No. 40 at 6.

The Members for Members slate was defeated, and the Tried and True slate was elected.  ECF No. 59 at 12.  Shortly thereafter, Mr. Holliday terminated the employment of Ms. Anderson and Ms. Kirwin.  ECF No. 59 at 12.  Mr. Holliday sent letters to each explaining that his confidence in their ability to carry out the policies implemented by the local office was shaken by their conduct in opposing the Tried and True campaign.

**APPLICABLE LAW**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A key purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Summary judgment is "not a disfavored procedural

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 5

shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Celotex*, 477 U.S. at 327.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. The moving party must demonstrate to the Court that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp.*, 477 U.S. at 325. The burden then shifts to the non-moving party to "set out 'specific facts showing a genuine issue for trial.'" *Celotex Corp.*, 477 U.S. at 324 (quoting Fed. R. Civ.P. 56(e)).

A genuine issue of material fact exists if sufficient evidence supports the claimed factual dispute, requiring "a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987). At summary judgment, the court draws all reasonable inferences in favor of the nonmoving party. *Dzung Chu v. Oracle Corp.* (*In re Oracle Corp. Secs. Litig.*), 627 F.3d 376, 387 (9th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). The evidence presented by both the moving and non-moving parties must be admissible. Fed. R. Civ. P. 56(e). The court will not presume missing facts, and non-specific facts in

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 6

1  affidavits are not sufficient to support or undermine a claim.  *Lujan v. Nat'l*

2  *Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

3                                     **DISCUSSION**

4          In their First Amended Complaint, the Plaintiffs alleged two violations of

5  Labor-Management Reporting and Disclosure Act ("LMRDA") and wrongful

6  termination in violation of Washington State public policy.  Since that time, the

7  Plaintiffs have filed a second and third amended complaint in which they added

8  claims for failure to pay overtime and breach of contract / promise of specific

9  treatment in specific situations.  The instant motion addresses the Plaintiff's

10  LMRDA and wrongful termination claims.

11  **Plaintiffs' Claims under the LMRDA**

12          Section I of the LMRDA, 29 U.S.C. §§ 411-415, provides a "bill of rights"

13  for union members.  Of note here are the following provisions of 29 U.S.C. §

14  411(a):

15              (1) Equal rights
              Every member of a labor organization shall have equal rights and
16          privileges within such organization to nominate candidates, to vote in
              elections or referendums of the labor organization, to attend
17          membership meetings, and to participate in the deliberations and
              voting upon the business of such meetings, subject to reasonable rules
18          and regulations in such organization's constitution and bylaws.

19  29 U.S.C. § 411(a)(1).

20              (2) Freedom of speech and assembly

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 7

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C § 411(a)(2).

> (5) Safeguards against improper disciplinary action
> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5).

If any of these rights are violated, a person has a private right of action in the United States district court.  29 U.S.C. § 412.

The Plaintiffs allege that the rights secured by § 411(a)(1)-(2) were violated when Ms. Kirwin and Ms. Anderson were terminated for holding opinions and making statements in opposition to the elected officials of Local 690.  The Plaintiffs also allege that the termination constituted "discipline" and violated §411(a)(5).

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

In seeking summary judgment, the Defendants rely primarily on *Finnegan v. Leu*, 456 U.S. 431 (1982).  In *Finnegan*, the Supreme Court was faced with the question of "whether the discharge of a union's appointed business agents by the union president, following his election over the candidate supported by the business agents, violated the [LMRDA]."  *Id.* at 432-33.  The Supreme Court did not decide whether a retaliatory discharge could ever give rise to a cause of action under § 412, but the Court did decide that the LMRDA "does not restrict the freedom of an elected union leader to choose a staff whose views are compatible with his own."  *Id.* at 441.  The Court noted that the purpose of the LMRDA "was to ensure that unions would be democratically governed, and responsive to the will of the union membership as expressed in open, periodic elections."  *Id.* (citing *Wirtz v. Hotel Emplyees*, 391 U.S. 492, 497 (1968)).  The Court concluded that "the ability of an elected union president to select his own administrators is an integral part of ensuring a union administration's responsiveness to the mandate of the union election."  *Id.*  The Court left "open the question whether a different result might obtain in a case involving nonpolicymaking and nonconfidential employees."  *Id.* at 441 n.11.  The Court recognized that this situation

> [n]o doubt this poses a dilemma for some union employees; if they refuse to campaign for the incumbent they risk his displeasure, and by supporting him risk the displeasure of his successor. However, in enacting Title I of the Act, Congress simply was not concerned with perpetuating appointed union employees in office at the expense of an

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

elected president's freedom to choose his own staff. Rather, its concerns were with promoting union democracy, and protecting the rights of union members from arbitrary action by the union or its officers.

*Id.* at 442.

It is plain from the record that the positions held by Ms. Anderson and Ms. Kirwin were positions appointed by the Secretary-Treasurer and that the Secretary-Treasurer was empowered to terminate them. It is also plain that Ms. Anderson and Ms. Kirwin were terminated due to their conduct in opposing the slate supported by the Secretary-Treasurer. Accordingly, the question for the Court is whether Ms. Anderson and Ms. Kirwin are the type of employees who may be terminated for opposing the slate supported by the Secretary-Treasurer.

Mr. Kirwin and Ms. Anderson assert that they are not the type of confidential, policymaking employees discussed in *Finnegan* and that their termination, unlike the business agents in *Finnegan*, is an actionable violation of their LMDRA rights. The *Finnegan* Court did not explain what qualifies an employee as confidential or policymaking. However, the Court did explain that its concern was preserving the ability of an elected union official to effect the policy goals for which he or she was elected by selecting a staff that he or she could trust. Accordingly, when looking at whether information or authority available to a union employee qualifies that employee as "confidential" or "policymaking," the

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 10

Court will focus on whether the employees are in a position to frustrate the policies of the elected official.

Ms. Anderson opened and copied the mail that came into the union, kept the union's books, took messages for the officers, and typed documents for the officers. Ms. Kirwin similarly took messages for the elected officers, drafted documents for those officers, and worked the front counter and phones for the union. Along with a third member of the office staff, the Plaintiffs represented the face of the union administration to its 3,000 enrolled members in the union's day-to-day affairs. The Court concludes that, like the business agents in *Finnegan*, the Plaintiffs have "significant responsibility for the day-to-day conduct of union affairs." *Id.* at 441-42. Forcing an elected union official to retain appointed support staff whom he does not trust would violate the official's ability to effect the policy goals for which he or she was elected, which is the democratic purpose for which the LMRDA was enacted.

Like in *Finnegan*, the election in this case proceeded in a democratic fashion. Neither Ms. Anderson nor Ms. Kirwin was prevented from seeking office or supporting the candidate of her choice. The record supports the conclusion that the election was vigorously contested. There is no evidence in the record of voting irregularities or other wide-spread disenfranchisement. Of the candidates and

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11

supporters on the losing slate, all but Ms. Kirwin and Ms. Anderson continue to be members of Local 690.  ECF No. 63 at 4.

The fact that Ms. Kirwin and Ms. Anderson are no longer members of Local 690 does not compel a different outcome in this case.  Both plaintiffs' employment was terminated on December 7, 2009.  In her deposition testimony, Ms. Kirwin admitted that she was a member until "either March or April of 2010."  ECF No. 32 at 56.  Ultimately, Ms. Kirwin was suspended from the union for nonpayment of dues.  ECF No. 32 at 54-56.  Ms. Anderson admitted that her membership persisted after her termination and ended when until she took an honorable withdrawal from the union.  ECF No. 32 at 50-51.

While continued membership in a union requires union employment, the constitution of the IBT allows for six months in unemployment status before a member is forced into honorable withdrawal status.  ECF No. 63 at 10-11.  Based on this evidence, no reasonable jury could find that Ms. Kirwin and Ms. Anderson's termination immediately disqualified them for union membership, as Plaintiffs allege.  There is no evidence in the record that Ms. Anderson or Ms. Kirwin attempted to seek employment with any of the companies with which the union had a collective bargaining agreement.  Accordingly, the Court concludes that Ms. Kirwin and Ms. Anderson's terminations did not directly lead to their union membership being terminated.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 12

The Plaintiffs' last argument under the LMRDA is that even if Ms. Kirwin and Ms. Anderson were confidential or policy making employees, Ms. Kirwin and Ms. Anderson may still bring a claim under the LMRDA because their terminations were "'part of a purposeful and deliberate attempt . . . to suppress dissent within the union.'"  *Sheet Metal Workers' Int'l Assoc. v. Lynn*, 488 U.S. 347, 355 n.7 (1989) (quoting *Finnegan*, 456 U.S. at 441).

In support of their argument, the Plaintiffs quote from the Fifth Circuit's opinion in *Adams-Lundy v. Ass'n of Prof'l Flight Attendants*, 731 F.2d 1154, 1158 (5th Cir. 1984) for the proposition that:

> Patronage, after all, is precisely a system of rewards and punishments dependent on an individual's votes and views. Thus, under ordinary circumstances, the shuffling of positions caused by political in-fighting or factionalism within a union implicates no rights safeguarded by the LMRDA.
>
> Sometimes, however, one group or faction within a union may become so entrenched and despotic that the democratic character of the union is threatened. When this happens, and when the dominant group strives to stifle dissent and efforts at reform within the union, the rights of union members to belong to an open democratic labor organization are infringed. As these are the core interests protected by the LMRDA, the Act does provide a remedy in such a case, even if the particular repressive action challenged is the removal from office of a political opponent of the dominant clique-an action not ordinarily comprehended by the terms of § 102.

The Sixth Circuit has noted that plaintiffs who attempt to prove a deliberate suppression of political dissent "face an uphill battle."  *Harvey v. Hollenback*, 113 F.3d 639, 644 (6th Cir. 1997).  In *Harvey*, the court rejected the plaintiff's claim of

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 13

purposeful suppression of dissent by noting that the plaintiff "remained free, as did his supporters, to criticize openly the union's leadership and policies without retaliation" and that the plaintiff "was able to eventually mount a legitimate campaign" for union political office "although his bid was ultimately unsuccessful." *Id.*

In their brief, the Plaintiffs identify thirteen facts that they claim support their claim that Ms. Kirwin's and Ms. Anderson's terminations were part of a deliberate attempt to suppress dissent. ECF No. 37 at 13-14. Taking these facts as true, the Court concludes that the Plaintiffs have failed to establish that Mr. Holstrom and Mr. Holliday represented a regime "so entrenched and despotic that the democratic character of the union was threatened." While the Defendants' threats to fire employees who supported the Members for Members slate is certainly troubling, the *Finnegan* court recognized that appointed employees who oppose candidates risk termination should the opposed candidate win. 456 U.S. at 442. Additionally, where a union employs nine employees and has over 3,000 union members, the impact of threats to an appointed employee's job security on the democratic process is minimized, because even if all nine employees were disenfranchised because of termination, the thousands of other union members would still have a voice in union elections.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 14

1    Additionally, while an officer's exclusion from a board meeting, and

2    subsequent stripping of his authority, in response to his declaring his candidacy on

3    an opposition ticket could in other circumstances support a finding of purposeful

4    political suppression, Mr. Holman's exclusion does not because he was reinstated

5    in eight days and was in no way hampered in his campaign for the office of

6    president.  In short, like the plaintiff in *Harvey*, the Plaintiffs' assertion of political

7    suppression is belied by the fact that the record shows that they were able to

8    campaign and support a campaign in opposition to the Defendants.  They have

9    failed to prevail in their uphill battle.[2]

10

11    [2]The Court rejects the Plaintiffs' assertion that Mr. Holstrom's use of union

12    funds to "oppose the rank-and-file delegate slate in violation of the IBT

13    International Union Delegate and Officer Election Rules" is sufficient standing

14    alone to establish suppression of political dissent, ECF No. 37 at 14.  The Plaintiffs

15    rely on *Brett v. Hotel, Motel, Rest., Constr. Camp Emps. & Bartender's Union*, 828

16    F.2d 1409 (9th Cir. 1987).  However, *Brett* is easily distinguishable.  Not only did

17    *Brett* present a plethora of preservation of error issues for the circuit that limited

18    the scope of its inquiry, but the plaintiff in *Brett* was removed from her office for

19    opposing the newly elected administration, and, when it was determined that she

20    would win re-election back to that office, the election was canceled and a new

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 15

1    Ultimately the Court concludes that this case falls squarely within the ambit

2  of *Finnegan*.  Ms. Kirwin and Ms. Anderson were appointed employees of the

3  Secretary-Treasurer.  They opposed the slate that had appointed them.  After a full

4  and fair election, the slate they supported lost.  As a result, their employment was

5  terminated.  Under *Finnegan*, such a result does not violation the LMRDA.

6  Accordingly, Ms. Kirwin's and Ms. Anderson's claims under the LMRDA fail as a

7  matter of law.

8  **State law claims**

9    The Plaintiffs have alleged that they were terminated in violation of the

10 public policy of Washington State.  Washington is an at-will employment state,

11 and, generally, an employee may be terminated for "'no cause, good cause or even

12 cause morally wrong without fear of liability.'".  *Ford v. Trendwest Resorts, Inc.*,

13 146 Wn.2d 146, 152 (2002) (quoting *Thompson v. St. Regis Paper Co.*, 102 Wn.2d

14 219, 226 (1984)).  One of the recognized exceptions to this rule is a "narrow public

15 policy exception."  *Id.* (citing *Smith v. Bates Technical Coll.*, 139 Wn.2d 793

16 (2000)).  "Under this exception, an employer does not have the right to discharge

17 an employee when the termination would frustrate a clear manifestation of public

18 policy."  *Id.* (citing *Smith*, 139 Wn.2d at 804-08).

19 officer appointed in her place.  *Id.* at 1411-12, 1414, 1416.  Nothing remotely

20 resembling those facts exists in this case.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 16

The Plaintiffs assert that the clear public policy of the State of Washington is identified by RCW 42.17A.495(2)[3] which reads in pertinent part:

> No employer or labor organization may discriminate against an officer or employee in the terms or conditions of employment for (a) the failure to contribute to, (b) the failure in any way to support or oppose, or (c) in any way supporting or opposing a candidate, ballot proposition, political party, or political committee.

The Defendants assert that the Plaintiffs' state-law claim is preempted by the National Labor Relations Act ("NLRA"). Under the NLRA,

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection . . . .

29 U.S.C. § 157. The NLRA restricts employers and labor organizations from restraining or coercing employees from exercising the rights granted under § 157. 29 U.S.C. § 158(a)(1), (b)(1).

The Defendants contend that the state law claim provides a remedy for conduct regulated by the NLRA and is thus preempted under the rule announced in *San Diego Bldg. Trades Council, Millmen's Union, Local 2020 v. Garmon*, 359 U.S. 236 (1959). "[T]he *Garmon* rule prevents States not only from setting forth standards of conduct inconsistent with the substantive requirements of the NLRA,

---

[3]The Plaintiffs cited to RCW 42.17.680. That statute was recodified as RCW 42.17A.495 effective January 1, 2012.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 17

1    but also from providing their own regulatory or judicial remedies for conduct

2    prohibited or arguably prohibited by the Act."  *Wisconsin Dept. of Indus., Labor*

3    *and Human Relations v. Gould Inc.*, 475 U.S. 282, 276 (1986) (citing *Garmon*, 359

4    U.S. at 247).

5            The Plaintiffs assert that the protections here are not from the NLRA but are

6    instead from the LMRDA.   The Plaintiffs further assert that, under the LMRDA,

7    state law causes of action are specifically not preempted.  29 U.S.C. § 413

8    ("Nothing contained in this subchapter shall limit the rights and remedies of any

9    member of a labor organization under any State or Federal law or before any court

10   or other tribunal, or under the constitution and bylaws of any labor organization.").

11           However, while the LMRDA may not preempt state law, the LMRDA "was

12   intended to protect only rank-and-file union membership and not job security or

13   tenure of union employees."  *NLRB v. Carpenters Local Union No. 35*, 739 F.2d

14   479, 483 (9th Cir. 1984).  In contrast, the NLRA "protections are intended to

15   protect the employee-employer relationship.  *Id.*

16           The state law cause of action asserted by the Plaintiffs is a cause of action

17   for wrongful termination in violation of public policy.  The statute cited by the

18   Plaintiffs in support of their claim that Ms. Kirwin's and Ms. Anderson's

19   terminations violated public policy speaks specifically about employment rights.

20   RCW 42.17A.495(2) ("No . . . labor organization may discriminate against an

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 18

officer or employee in the terms or conditions of *employment*." (emphasis added)).

The Plaintiffs' state law claim springs from their employment with the Union, not

their membership in the Union.  As a claim springing from employment, the state

law claim is included within the protections of § 157, and the NLRA is applicable,

not the LMRDA,

In *Carpenters*, Klaus Martin and William Prescott were members of the

Carpenters Union Local 35 ("Union").  739 F.2d at 480.  They also were employed

by the Union and elected to positions within the Union.  *Id.*  Mr. Martin

challenged the board at regular member meetings on various issues related to the

Union's financing.  *Id.* at 480-81.  Mr. Martin and Mr. Prescott also contacted the

Department of Labor to complain about the Union.  *Id.*  at 481.  When it was time

for elections, Mr. Martin was defeated and lost his position while Mr. Prescott was

ruled ineligible based on past nonpayment of dues.  *Id.*  Mr. Martin and Mr.

Prescott again complained to the Department of Labor.  *Id.*  Eventually, Mr. Martin

and Mr. Prescott were fired from employment with the Union.  *Id.*  Mr. Martin and

Mr. Prescott brought suit alleging an unfair labor practice in violation of the

NLRA.  *Id.*  Mr. Martin and Mr. Prescott prevailed and the National Labor

Relations Board ("Board") found that both Martin and Prescott had been

terminated because of their activities challenging the Union's decisions.  *Id.* at 482.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 19

1    While Mr. Martin settled with the Union, Mr. Prescott's employment was

2    reinstated with back pay.  *Id.* at 481.

3        On appeal to the Ninth Circuit, the Union argued that the activities engaged

4    in by Mr. Martin and Mr. Prescott were not protected under § 157 of the NLRA.

5    *Id.* at 482.  However, the Ninth Circuit disagreed.  The panel affirmed the Board's

6    decision that Mr. Martin and Mr. Prescott had "engaged in concerted activity for

7    the purpose of 'mutual aid or protection,'" because "they were attempting to

8    'protect the integrity of their collective bargaining representative.'" *Id.* at 482-83.

9    The Union argued that the rights asserted by Mr. Martin and Mr. Prescott were

10   rights under the LMRDA, and that the LMRDA did not protect the employment

11   relationship that the men had with the Union.  *Id.* at 483.  Focusing on the fact that

12   the LMRDA protected Mr. Martin's and Mr. Prescott's rights as members, and that

13   the NLRA protected their rights as employees, the panel stated, "[w]hile the

14   LMRDA may be the 'source for the protection of a union member's right to

15   participate fully and freely in the internal affairs of his own union,' the legality of

16   these discharges must be resolved within the framework of the [NLRA]." *Id.*

17   (quoting *Retail Clerks Union, Local 770*, 208 NLRB 356, 357 (1974)).

18       While it is not perfectly clear from the *Carpenters* opinion whether activity

19   engaged in for "mutual aid or protection" covers the whole of conduct protected

20   under the LMRDA, it is clear that, at a minimum, the adverse employment action

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 20

resulting from the campaign conduct described in this record is "arguably" protected under the NLRA. *Gould*, 475 U.S. at 286.  As that is all that is required for state remedial schemes to be preempted, the Court concludes that the Plaintiffs' state law claim for wrongful termination in violation of public policy is preempted by the NLRA.[4]

Accordingly, **IT IS HEREBY ORDERED:**

1.  The Defendants Motion for Partial Summary Judgment, **ECF No. 26**, is **GRANTED**.

2.  The Plaintiffs' claims under the LMRDA and the Plaintiffs' state law wrongful termination claim are hereby **DISMISSED WITH PREJUDICE**.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[4]Accordingly, this Court does not reach the Defendants' other arguments that public policy does not support the Plaintiffs' state law cause of action or that Ms. Kirwin is judicially estopped from asserting the state law claim.

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 21

3.  All other claims remain pending.

**IT IS SO ORDERED**.

The District Court Executive is hereby directed to enter this Order and to provide copies to counsel.

**DATED** this 21st day of February 2012.


                          _____ *s/ Rosanna Malouf Peterson* _____
                          ROSANNA MALOUF PETERSON
                          Chief United States District Court Judge

ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 22